KOG/LJW: USAO2017R00251

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| UNITED STATES OF AMERICA | * |
| v. | * CRIMINAL NO. RDB-17-0288 |
| NATHANIEL THOMAS OAKS | * (Wire Fraud, 18 U.S.C. § 1343; Honest Services Wire Fraud, 18 U.S.C. §§ 1343, 1346; Travel Act, 18 U.S.C. § 1952; Obstruction of Justice, 18 U.S.C. § 1512(c)(2); Forfeiture, 18 U.S.C. §§ 981(a)(1)(C), 21 U.S.C. § 853, and 28 U.S.C. § 2461(c)) |
| Defendant | |

*******

## SUPERSEDING INDICTMENT

### COUNTS ONE THROUGH THREE
(Wire Fraud)

The Grand Jury for the District of Maryland charges that:

At all times relevant to this Indictment:

### Introduction

1.  The General Assembly was the State of Maryland's legislative body. The bicameral legislature was composed of the Senate, with 47 Senators, and the House of Delegates, with 141 Delegates.

2.  The United States Department of Housing and Urban Development ("HUD") was a federal department that, among other things, provided funding in the form of grants for housing developments and projects in distressed neighborhoods.

1

3. Maryland state law prohibited a person from giving a public employee, and prohibited a public employee from demanding or receiving a bribe, fee, reward or testimonial in exchange for influencing the performance of the official duties of the public employee, or neglecting or failing to perform the official duties of the public employee, as provided by Maryland Code, Criminal Law, § 9-201.

4. The defendant, **NATHANIEL THOMAS OAKS** ("**OAKS**"), was a Maryland State Delegate from 1994 until February 10, 2017, and then was a Maryland State Senator. Both as a Delegate and as a Senator, **OAKS** represented District 41, which covered a portion of the City of Baltimore, Maryland.

5. The State of Maryland and its citizens had an intangible right to the honest services of its elected public officials. As a Delegate and as a Senator of the General Assembly, **OAKS** owed the State of Maryland and its citizens a duty to, among other things, refrain from receiving bribes in exchange for **OAKS**' official actions and influence.

6. "Mike" was a confidential human source posing as a developer from Texas who was interested in generating and obtaining business in the State of Maryland.

## The Scheme To Defraud

7. Beginning in or about April, 2016, and continuing until in or about January, 2017, in the District of Maryland and elsewhere, the defendant,

**NATHANIEL THOMAS OAKS**

knowingly and willfully devised and intended to devise, and participated in, a scheme and artifice to defraud HUD by means of materially false and fraudulent pretenses, representations and promises.

### Purpose of the Scheme to Defraud

8. It was the purpose of the scheme for **OAKS** to use his official influence and position as a member of the General Assembly and to enrich himself by accepting cash payments in exchange for making false and fraudulent representations to HUD in order for Mike to obtain certain grant funding for a housing development project in Baltimore.

### Manner and Means of the Scheme to Defraud

9. It was part of the scheme to defraud that **OAKS** agreed to accept cash payments from Mike in exchange for his agreement to use his official position and influence as a member of the General Assembly in ways that would help Mike advance his business and financial interests.

10. It was further part of the scheme to defraud that, in order to avoid detection and to conceal the true nature of their relationship, **OAKS** would often speak in code to Mike when discussing details of the scheme over the telephone.

11. It was further part of the scheme to defraud that on or about April 7, 2016, **OAKS** issued a letter on his official House of Delegates letterhead to a person whom he believed to be a HUD official which contained materially false and fraudulent representations in order to assist Mike in obtaining federal grant funds from HUD.

12. It was further part of the scheme to defraud that on or about April 28, 2016, in a telephone conversation with a person whom he believed to be a HUD official working with "John Knox," **OAKS** made false and fraudulent statements and representations, including that he was familiar with other projects that Mike had completed, that he had known Mike for a number

of years, and that he had personally spoken to officials in other jurisdictions about projects that Mike had completed when, in fact, **OAKS** knew that none of those statements were true.

13. It was further part of the scheme to defraud that on or about May 11, 2016, while in a hotel room in Baltimore, Maryland, **OAKS** accepted $5,300 in cash from Mike.

14. It was further part of the scheme to defraud that on or about July 21, 2016, **OAKS** issued a letter on his official House of Delegates letterhead to "John Knox," a person whom he believed to be a HUD official, that contained the materially false and fraudulent representation that **OAKS** had pre-filed legislation for the 2017 Maryland General Assembly that would secure state funding for Mike's housing project.

15. It was further part of the scheme to defraud that, in order to avoid detection and to conceal the scheme to defraud, **OAKS** often used a cellular telephone, provided by Mike, to engage in conversations with Mike about the details of the scheme.

16. It was further part of the scheme to defraud that on or about July 21, 2016, while in a hotel room in Baltimore, Maryland, **OAKS** accepted $5,000 in cash from Mike.

## Execution of the Scheme and Artifice

17. On or about the dates set forth below, in the District of Maryland and elsewhere, the defendant

**NATHANIEL THOMAS OAKS**

for the purpose of executing and attempting to execute the scheme and artifice to defraud, did transmit and cause to be transmitted by means of wire and radio communication in interstate commerce, writings, signs, signals, pictures, and sounds, as described below:

| COUNT | DATE | TRANSMISSION | TO/FROM |
| --- | --- | --- | --- |
| 1 | 4/7/16 | Letter from Delegate **NATHANIEL THOMAS OAKS** to Mr. John Knox regarding a proposal by RMH Developments to the United States Department of Housing and Urban Development | Sent from Annapolis, Maryland to Chicago, Illinois via facsimile |
| 2 | 4/28/16 | Telephone call to cellular telephone number used by **NATHANIEL THOMAS OAKS** | To Maryland from Illinois |
| 3 | 7/21/16 | Letter from Delegate **NATHANIEL THOMAS OAKS** to Mr. John Knox regarding pre-filed legislation for state funding relating to an RMH Developments housing project | Sent from Owings Mills, Maryland to Chicago, Illinois via facsimile |

18 U.S.C. § 1343

## COUNT FOUR
## (Honest Services Wire Fraud)

The Grand Jury for the District of Maryland further charges that:

1. Paragraphs 1 through 16 of Counts One through Three of this Superseding Indictment are re-alleged and incorporated herein by reference.

2. A "bond bill" was legislation filed by a member of the General Assembly to obtain State of Maryland funding for local capital projects. Such projects could include, but were not limited to, health facilities, historic preservation projects, museums and sports and recreation facilities. A bond bill was not submitted as part of the Governor's capital budget and therefore, for such funding to be considered by the General Assembly, it had to be introduced by both a member of the House of Delegates and a member of the Senate.

3. The Maryland Department of Legislative Services ("DLS") was a Maryland governmental entity, created pursuant to Maryland Code, State Government, § 2-1202 et seq., which provided legal, fiscal, committee, research, reference, auditing, administrative, and technological support to the members of the Maryland General Assembly and its committees. These services included the drafting of legislation for legislators.

### The Scheme

4. Beginning in or about September, 2016, and continuing until in or about January, 2017, in the District of Maryland and elsewhere, the defendant,

**NATHANIEL THOMAS OAKS**

knowingly and willfully devised and intended to devise, and participated in, a scheme to defraud the State of Maryland and its citizens by depriving them of their intangible right to his honest services as an elected legislator in the Maryland General Assembly.

## Purpose of the Scheme

5.      It was the purpose of the scheme for **OAKS** to secretly use his official positon to enrich himself by accepting cash bribe payments from Mike in exchange for favorable official action.

## Manner and Means

6.      It was part of the scheme that **OAKS** agreed to use his official position as a member of the Maryland General Assembly to file a request for bond bill legislation with DLS in exchange for a cash bribe payment from Mike.

7.      It was further part of the scheme that on or about September 22, 2016, **OAKS** accepted $5,000 in cash from Mike in a hotel room in Baltimore, Maryland in exchange for his agreement to file a request for a bond bill that same day with DLS for the 2017 Maryland General Assembly Session.

8.      It was further part of the scheme that on or about September 22, 2016, **OAKS** submitted a request, in person, to DLS for the drafting of legislation in the form of a bond bill for the 2017 Maryland General Assembly Session that would authorize the issuance of state funds to a company associated with Mike in the amount of $250,000 for the "Multi-Family Housing Development at Druid Park Lake."

9.      It was further part of the scheme that on or about November 17, 2016, **OAKS** received a copy of the draft of the bond bill from DLS.

## Execution of the Scheme

10. On or about November 21, 2016, in the District of Maryland and elsewhere, the defendant

**NATHANIEL THOMAS OAKS**

for the purpose of executing and attempting to execute the scheme, did transmit and cause to be transmitted by means of wire and radio communication in interstate commerce, writings, signs, signals, pictures, and sounds, to wit: an e-mail communication from **NATHANIEL THOMAS OAKS** to Mike at rmhdevelopments@gmail.com, forwarding a copy of Draft Bill LR0680 entitled "Creation of a State Debt – Baltimore City – Multifamily Housing Development at Druid Lake Park" from Maryland through a server located outside the State of Maryland.

18 U.S.C. §§ 1343, 1346

## COUNTS FIVE THROUGH NINE
### (Travel Act)

The Grand Jury for the District of Maryland further charges that:

1. Paragraphs 1 through 16 of Counts One through Three, and paragraphs 2 through 3 and 5 through 9 of Count Four of this Superseding Indictment are re-alleged and incorporated herein by reference.

2. From in or about September, 2016, and continuing until in or about January, 2017, **OAKS** engaged in an arrangement with Mike pursuant to which **OAKS** would receive and agreed to receive cash bribe payments in order to influence the performance of his official duties as a member of the Maryland General Assembly.

3. On or about the dates listed below, in the District of Maryland and elsewhere, the defendant

### NATHANIEL THOMAS OAKS

did use and cause to be used a facility in interstate commerce as described below, with the intent to promote, manage, establish, carry on, and facilitate the promotion, management, establishment and carrying on of an unlawful activity, to wit: bribery in violation of Maryland Code, Criminal Law § 9-201; and thereafter did perform and cause the performance and attempted performance of an act to promote, manage, establish and carry on, and to facilitate the promotion, management, establishment and carrying on of said unlawful activity, as described below:

| COUNT | DATE | USE OF INTERSTATE FACILITY | TO/FROM |
|---|---|---|---|
| 5 | 9/12/16 | Cellular telephone | Call to Mike from **OAKS** |
| 6 | 9/15/16 | Cellular telephone | Call to **OAKS** from Mike |

| COUNT | DATE | USE OF INTERSTATE FACILITY | TO/FROM |
|-------|------|---------------------------|---------|
| 7 | 9/19/16 | Cellular telephone | Call to Mike from **OAKS** |
| 8 | 11/3/16 | Cellular telephone | Call to **OAKS** from Mike |
| 9 | 11/21/16 | Cellular telephone | Call to Mike from **OAKS** |

18 U.S.C. § 1952(a)(3) and (b)(2)

## COUNT TEN

### (Obstruction of Justice)

The Grand Jury for the District of Maryland further charges that:

1. Paragraph 1 and Paragraphs 3 through 5 of Count One of this Superseding Indictment are re-alleged and incorporated herein by reference.

2. On or about January 9, 2017, **OAKS** agreed to cooperate with the Federal Bureau of Investigation ("FBI") in an investigation of Person #1 for possible violations of federal criminal laws.

3. As part of that cooperation, and at the direction of the FBI, **OAKS** covertly recorded his telephone conversations and in-person meetings with Person #1 beginning on January 9, 2017 and continuing until March 30, 2017.

4. **OAKS** knew and understood that in connection with the investigation of Person #1, he could be required to testify in a future official proceeding about his cooperation and his contacts with Person #1.

5. On or about March 17, 2017, without recording or disclosing the existence of the conversation to the FBI, **OAKS** approached Person #1 at a bar in Annapolis and told him "what we talked about, just say no," or words to that effect, with the intent to dissuade Person #1 from engaging in the activity that was the subject of the criminal investigation and which activity **OAKS** and Person #1 had discussed in a recorded conversation earlier that day.

6. On or about March 30, 2017, without recording or disclosing the existence of the conversation to the FBI, **OAKS** approached Person #1 in the hallway of a State government

building in Annapolis and said "I'm going to ask you for something, just say no," or words to that effect, with the intent to dissuade Person #1 from engaging in the activity that was the subject of the criminal investigation and which activity **OAKS** and Person #1 had discussed in earlier recorded conversations.

7. Person #1 understood from **OAKS'** statements on March 17 and March 30, 2017, that **OAKS** intended to and did warn him that he should not engage in the activity with **OAKS** that they had discussed because there was a criminal investigation underway.

8. From on or about March 17, 2017, until on or about March 30, 2017, in the District of Maryland and elsewhere, the defendant

**NATHANIEL THOMAS OAKS**

attempted to and did corruptly obstruct, influence and impede an official proceeding, namely a federal Grand Jury investigation that would foreseeably result from the FBI's investigation of possible violations of federal criminal laws.

18 U.S.C. § 1512(c)(2)

## FORFEITURE

The Grand Jury for the District of Maryland further finds that:

1. Upon conviction of the offenses in violation of Title 18, United States Code, §§ 1343, 1346, as set forth in Counts One through Four of this Superseding Indictment, and § 1952(a)(3) and (b)(2), as set forth in Counts Five through Nine, the defendant,

## NATHANIEL THOMAS OAKS

shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C), Title 21, United States Code, Section 853, and Title 28, United States Code, Section 2461(c), any property, real and personal, which constitutes and is derived from proceeds traceable to such violations, including but not limited to a sum of money equal to the value of the proceeds of the schemes to defraud as described in Paragraphs 1 through 16 of Counts One through Three and paragraphs 2 through 3 and 5 through 9 of Count Four, which amount is at least $15,300.

### Substitute Assets

2. If, as a result of any act or omission of the defendant, any such property subject to forfeiture:

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third person;

    c. has been placed beyond the jurisdiction of the Court;

    d. has been substantially diminished in value; or

    e. has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States of America, pursuant to 21 U.S.C. § 853(p), to seek forfeiture of any other property of said defendants up to the value of the forfeitable property.

18 U.S.C. § 981(a)(1)(C)
21 U.S.C. § 853
28 U.S.C. § 2461(c)

_____
STEPHEN M. SCHENNING
ACTING UNITED STATES ATTORNEY

A TRUE BILL:

11/15/17
Date

**SIGNATURE REDACTED**
_____
Foreperson

14